(31 App. Div. 361.)

### BECK v. BOARD OF SUP'RS OF ERIE COUNTY.

(Supreme Court, Appellate Division, Fourth Department. June 18, 1898.)

SHERIFF—COMPENSATION—SALARIES OF DEPUTIES.

Laws 1891, c. 108, § 1, provides that the sheriff of Erie county shall receive, as compensation for his services, an annual salary, to be fixed by the board of supervisors prior to his election, not less than $4,000 nor more than $5,000 per annum. Section 2 declares that the salary so fixed shall constitute the whole compensation to be paid or received by said sheriff for all official services, and no compensation, payment, or allowance shall be made to him for any services except the salary aforesaid. *Held*, that the sheriff could not recover from the county salary paid to deputies and undersheriffs employed to assist in the performance of his duties.

Appeal from special term, Erie county.

Application by August Beck for a peremptory writ of mandamus against the board of supervisors of Erie county. From an order denying such application, he appeals. Affirmed.

The following is the opinion of the court below (GREEN, J.):

The counsel for the relator states the question to be whether, under chapter 108, Laws 1891, the "salaries" paid to the undersheriff and deputy sheriffs connected with the office of sheriff are "actual and necessary disbursements" incurred by the sheriff in the discharge of his duties as such. That the salaries so paid or allowed may, in a general sense, have been actual and necessary disbursements may be conceded; but it by no means follows that such salaries are "disbursements," in the contemplation of the law, for which a legal right or claim is conferred upon the sheriff, or a legal duty or obligation is imposed upon the county. A payment for services inuring to the benefit of the county or the public may be a necessary disbursement, but it does not necessarily follow that it constitutes a legal claim or obligation upon a county treasury. It is not a logical conclusion that because the statute makes compensation to the sheriff for "his services," and makes no provision whatever for the compensation of the deputies whom he is authorized or required to appoint, therefore he has implied authority to allow them a fair and reasonable compensation for their services, and to claim it is a necessary disbursement for the benefit of the county.

The statutes provide that the sheriff "shall" appoint an undersheriff, and "may" appoint such and so many deputies as he may think proper (1 Rev.

St. p. 379, §§ 71, 72), but not to exceed one for every 3,000 inhabitants (Laws 1892, c. 686, § 182). The undersheriff and general deputies are officers, and are within the provisions of the statute relating to the appointment and resignation of officers, and they must possess the same qualifications as the sheriff himself. The jailer is but a servant of the sheriff, and is not an officer; and it is not necessary, therefore, that he should possess the qualifications required of the sheriff or his deputies, or that he should be appointed by writing, or that he should take the oath of office. It is usual, however, to appoint a jailer a deputy also; and in such cases his appointment and bond to the sheriff may include the place of jailer as well as the office of deputy. Crock. Sher. § 14. The undersheriff, general deputies, and jailers hold their respective appointments during the pleasure of the sheriff, and they may be removed at any time, and others appointed in their stead. The death, removal from office, or resignation of the sheriff vacates the office of all the general and special deputies, jailers, and turnkeys, but it is otherwise with the undersheriff. Id. § 15. The powers and duties of an undersheriff are in some respects more extensive than those of the deputy. Thus he may, like the sheriff, depute persons to do particular acts. In the absence of the sheriff, he must attend upon the drawings of juries for the courts of his county. He must attend, in the absence of the sheriff, upon the execution of a criminal. Whenever a vacancy shall occur in the office of sheriff, the undersheriff shall, in all things, execute the office of sheriff of the county until a sheriff shall be elected or appointed. In all other respects the undersheriff is upon an equality with the general deputies. Id. § 16. The appointment of undersheriff and general deputies confers on them, generally speaking, the power to execute all the ministerial duties of the sheriff. Id. § 17. The sheriff may allow his subordinate officers such compensation as shall be agreed upon, either by way of salary or by allowing them a portion of the perquisites to which he is entitled as the principal; and he may contract with his undersheriff and deputies for the discharge of the duties of their several trusts, either for a specific compensation or for a reasonable proportion of the fees and emoluments arising from the performance of such duties. Id. § 21. The undersheriff, while discharging the duties of the office in case of a vacancy therein, is entitled to the emoluments of the office. Laws 1892, c. 686, § 190; People v. Hopkins, 55 N. Y. 74.

In the contemplation of the law, the fees which the statutes prescribe are adequate compensation for the risk and expense incurred. Crofut v. Brandt, 58 N. Y. 112. The sheriff accepts office upon the condition of performing its entire duties for such compensation as is specifically allowed by express provisions of law, and without any right to claim any other remuneration. This necessarily includes and limits the power of the sheriff to delegate any other person any right to extra compensation which he could not himself claim. O'Connor v. O'Connor, 47 Super. Ct. 505. The officer takes his office cum onere, as well with its honors and profits as with the duty of performing such service required of him by law, however onerous, expensive, or responsible. He takes the good with the bad,—the cases that are remunerative with those that are expensive,—and for such compensation as the law specifically affords. Crofut v. Brandt, 46 How. Prac. 484. Persons acting in autre droit as executors, administrators, guardians, receivers, etc., are, upon a faithful execution of their trust, to be indemnified out of the trust property for all expenses necessarily incurred in the faithful performance of their duties, but the sheriff is in no sense here intended a trustee. Crock. Sher. § 492. The general rule is that the rendition of the services of a public officer is deemed to be gratuitous unless a compensation therefor is fixed by a statute or by an ordinance passed pursuant to a power given by statute. The rule is inflexible that an officer can demand only such fees as the law has fixed and authorized for the performance of his official duties. This doctrine applies where the compensation claimed is a salary payable by the public authorities, or fees payable either by the public authorities or by an individual. Throop, Pub. Off. §§ 446, 447, 449. The officer is deemed to have been familiar with the law or ordinance creating the office when he accepted the position, and there is no implied contract for compensation. Beach, Pub. Corp. §§ 167, 168. If there is an omission in a village charter to make provision for compensation to members of a certain

board, and it is apparent that such omission was intentional, the members cannot receive any compensation. Id. § 169.

Bearing in mind these general doctrines of the law and statutory provisions, we will consider whether these so-called "disbursements" are "county charges," within the meaning and contemplation of the statutes. The salaries of various officers and their deputies or assistants were made county charges by special statutes. 2 Rev. St. (8th Ed.) 1067, 1077. By section 12, c. 686, Laws 1892, the board of supervisors is empowered to fix the pay of clerks, assistants, and employés in certain offices specified. The Revised Statutes provided that these shall be deemed county charges, viz.: "The moneys necessarily expended by any county officer in executing the duties of his office in cases in which no specific compensation for such services is provided by law. The contingent expenses necessarily incurred for the use and benefit of the county." 1 Rev. St. p. 386, § 3, subds. 9, 15. And see re-enactment in section 230, c. 686, Laws 1892. The adjudications establish this general principle: that whenever services have been rendered which are beneficial to a county, and no specific compensation is provided by law, they shall be deemed contingent charges against the county. Brady v. Supervisors, 2 Sandf. 460; Doubleday v. Supervisors, 2 Cow. 533; People v. City of Kingston, 101 N. Y. 96, 4 N. E. 348. But it is conceded that the salary or compensation by law allowed to an undersheriff or deputy for general services could not, under the provisions quoted, have been claimed as a county charge. No such claim, we believe, was ever made, but, if made, could not be maintained for a moment. Now, the fact that the office of sheriff is made a salaried office without any provision being made for the compensation of his subordinates does not and cannot operate to work a change in the provisions quoted, or to alter or extend the construction put upon them by the decisions of the courts, so as to give the sheriff or his subordinates any claim upon the public treasury, or to make their general services county charges under the name of general expenses or disbursements. An important amendment was made to the statutes by subdivision 3, § 230, c. 686, Laws 1892: "The compensation of the county officers, their subordinates and assistants, which are payable by the county, are made county charges." It is true that this amendment was enacted more than a year after the sheriff's subordinates were appointed; still, it has an important bearing upon the question before the court. It is general in its scope, and is designed to apply to all such officers and their subordinates whose compensation or salaries are or may be provided for by statute. It does not determine the right to compensation, for that must be sought for in other statutes, but simply declares that such compensation, if authorized, is a counter charge which the board of supervisors must audit and allow. If the sheriff's subordinate officers or assistants, or the sheriff himself, in their behalf, are entitled to compensation for the general services, they must assert it by virtue of this provision, and not by way of expenses or disbursements. But, in order to maintain such a claim, they must point out some statutory provision or authority giving them the right or imposing a legal obligation or duty upon the board of supervisors to audit the claim. This they cannot produce, for none exists, and their claim must fail, unless, as it is strenuously insisted, the act of 1891, giving to the sheriff an allowance for his "actual and necessary disbursements," entitles them, through him, to compensation or salaries for their services, inuring in part to the benefit of the public and in part the special benefit of the sheriff and the parties in civil cases. By section 2 the sheriff's salary shall constitute the whole compensation which shall be allowed, paid to, or received by him for all official services performed by him for the United States, the state, or the county; and no compensation, payment, or allowance shall be made to him for his own use for any of such services except the salary aforesaid. By section 8 the board of supervisors is empowered to fix the salaries of the jailer, turnkey, assistants, or employés. By section 9 the sheriff shall be entitled, in addition to his salary, to charge, take, and receive the fees allowed him by law in civil causes or proceedings, and paid by litigants or individuals as and for his compensation for such service and disbursements rendered therein, and the services of the undersheriff and other employés of his office in such cases and proceedings. By section 10 he

is allowed and entitled to receive the necessary and actual disbursements incurred by him in the discharge of the duties designated in section 2, or in providing any services for which the county receives or is entitled to receive the fees therefor under this act, which said disbursements shall be audited and allowed by the board of supervisors. By section 11 the services of deputy sheriffs for attendance upon the courts, and for subpoenaing witnesses and serving warrants in criminal proceedings, shall be paid for at and after the same rate now allowed by law for such services, except that, where such deputy is a regular employé of the sheriff's department, and under a salary from him or from the county, he shall only be entitled to charge and receive the actual disbursements incurred by him, to be audited, etc.

We have seen that the jailer and his assistants were, and it seems still are, but servants or employés of the sheriff, and not officers of the county; and yet the legislature has seen fit to provide for their salaries, but omitted to make provision for the salaries of those who are officers. This we cannot but regard as an intentional omission, and as equivalent to a legislative declaration that they should receive no compensation for their general services from the public funds, but should remain in respect to their compensation in statu quo. The one who drafted this statute, as well as the members of the legislature at the time of its enactment, must have known that neither the sheriff nor his subordinates nor his assistants ever had any claim against the county for their general services, and yet, possessing such knowledge, they omitted to make any provision for their salaries and compensation, but expressly provided for the salaries of mere servants and employés of the sheriff. The lawgivers are also presumed to know that, unless provision is made for the salary of a public officer, he has no legal claim against the county, and consequently the board of supervisors have no power to audit or allow it. But, in the case of a mere employé, agent, or servant, whose employment is authorized or directed by law or ordinance, it has been decided in a number of cases that he may be entitled to recover a reasonable compensation as upon an implied contract. We are also of the opinion that section 9 of the act, taken in connection with all its provisions, and having regard to all other statutory provisions pertaining to the subject, as well as the general principles and rules of law, evince a legislative intention that, for whatever services deputies may render in the course of their employment for the benefit of the county, they will be compensated out of the fees received in civil causes, under such arrangement as they may make with the sheriff; but, however this may be, this section furnishes no warrant for the proposition that because the statute omits to provide for compensation for their services performed for the public benefit, and for which the county receives the fees, therefore the value of their services is a county charge. The statement made that the civil business is but "incidental" to the public business of the office we regard as without foundation; but, even if the statement were correct, it would not be material or affect the determination of this case either one way or the other. Nor does section 11 make the deputies' salaries a county charge. A regular deputy, having a salary from the sheriff, is not entitled to any compensation for the specific services mentioned; so if he is under salary from the county, but he is not. No authority is given to the sheriff to fix or allow salaries to his subordinates; nor is an authority given to the board of supervisors to fix or allow such salaries. And note that the undersheriff is not mentioned.

But the counsel for the relator contends that the undersheriff and the two deputies are entitled to compensation for their services from the county as "actual and necessary disbursements" incurred by the sheriff. To put the proposition in another form, the sheriff is entitled to receive from the county funds, as "disbursements," a sufficient sum of money to compensate his subordinates and assistants for their general services for the benefit of the county. This contention is founded upon section 10 of the statute. This proposition is not maintainable. If sound in principle, it would abrogate the well-settled rule of law that, if the compensation of an officer is not fixed or allowed by statute, his services, if of a strictly official nature, must be deemed gratuitous. It would be a novel doctrine, indeed, to declare that, where the statute makes no provision for salary or compensation for deputies authorized or directed

to be appointed in public office, they may obtain the same through the principal officer under the name of disbursements. This would be a palpable evasion of the rule of law, and ought not to be countenanced or upheld. It may be a serious omission of the legislature; but the courts cannot supply it, for their functions are not legislative, but of a judicial character only. The principal and his deputies accept their positions with knowledge of the defect in the statute, and they must therefore perform their duties gratuitously, and trust to the justice of future legislatures. The fact that the fees or salary of the principal officer are wholly inadequate in amount for the payment of his deputies gives to the latter no legal claim against the public authorities, nor does the payment by the former of a salary to the deputy give him any legal right to claim reimbursement.

It is not claimed, and cannot be, that the sheriff's assistants have any legal claim against the county, or that a writ of mandamus could, upon their application, issue to compel the board of supervisors to audit it. It should be noted, also, that the claim is for general services as deputies or assistants, rendered not only for the benefit of the county and state for which the county receives the fees, but also for the services they were called upon to perform for the benefit of the sheriff and of individuals in civil causes. If such claims were allowed, it might result that the salaries allowed to the deputies, etc., would exceed the fees received by the county. Counsel for the respondent has called the attention of the court to the provisions of section 3280 of the Code of Civil Procedure, which provides that "each public officer, upon whom a duty is expressly imposed by law, must execute the same without fee or reward except where a fee or other compensation therefor is expressly allowed by law. An officer or other person to whom a fee or other compensation is allowed by law, for any service, shall not charge or receive a greater fee or reward, for that service, than is so allowed."

Counsel has urged upon the court various equity reasons and considerations in support of his position that the relator ought to be reimbursed for the salaries paid to his subordinate officers. The powers of the court are circumscribed, and its jurisdiction limited to the bounds set by the constitution. The province of the court is to ascertain and declare the law, not to make it. It cannot trespass upon legislative ground. The remedy is legislative, and not judicial. The application for the writ of mandamus is denied, with $10 costs and disbursements.

Appeal from an order of the special term in Erie county, granted on the 26th day of December, 1893, entered in the clerk's office of Erie county on the 29th of May, 1894, which order denied the application of the relator for a peremptory writ of mandamus, "on the ground that he is not entitled thereto as a matter of law upon the facts appearing"; and the application for a peremptory writ was dismissed upon the merits, with costs. In November, 1891, the relator was elected sheriff of Erie county, and entered upon the discharge of his duties as such sheriff on the 1st day of January, 1892. He states in his affidavit that it became and was his duty to employ necessary undersheriffs, deputy sheriffs, clerks, and assistants to assist in the discharge of his duties as sheriff of the county of Erie. He also states in his affidavit that the supervisors have never fully provided what persons should be employed by him, or what salaries or compensation they should receive, under chapter 108 of the Laws of 1891; that he did appoint an undersheriff and various deputy sheriffs to assist in the discharge of the duties of his office, "said undersheriff to receive a salary of $2,500, and said deputy sheriffs each to receive $1,450, said salaries being reasonable and necessary, and the sala.ies which have been paid to persons filling the like positions in the sheriff's office for many years." His affidavit also states that he has "been compelled to pay to said Oliver G. Steele and said Patrick Burns and said Gotlieb Basler the amount of their salaries from January 1, 1892, to January 1, 1893; that the amount which deponent so paid was, $2,500 to Oliver G. Steele, $1,.'50 to Patrick Burns, and $1,450 to Gotlieb Basler, and said amounts were necessary and actual disbursements incurred by deponent in the discharge of the duties designated by section 2 of chapter 108 of the Laws of 1891, in per-

forming services for the county of Erie; that deponent duly presented claims therefor to the board of supervisors of the county of Erie, and demanded that they be audited and allowed by the board of supervisors as other claims against the county are audited and allowed; that the board of supervisors of Erie county considered said claims, and thereafter, and on or about the —— day of ——, 1892, refused to audit and allow said claims, as other claims against the county are audited and allowed, solely on the ground that, by the true construction of chapter 108 of the Laws of 1891, they were not proper claims against the county of Erie, as matter of law, notwithstanding the facts aforesaid. * * *" An affidavit of Fayette Kelly, chairman of the board of supervisors, was read in opposition, which contained several denials and the following language: "Deponent denies that the amounts paid to Oliver G. Steele, Patrick Burns, and Gotlieb Basler by said August Beck were necessary and actual disbursements incurred by him in the discharge of the duties designated by section 2 of chapter 108 of the Laws of 1891, or in performing services for the county of Erie; that such amounts were paid, in whole or in part, for services rendered the sheriff, for which he received fees to his own use, under section nine of said act."

Argued before HARDIN, P. J., and FOLLETT, ADAMS, and WARD, JJ.

John Cunncen, for appellant.

Spencer Clinton, for respondents Board of Sup'rs.

PER CURIAM. In chapter 108 of the Laws of 1891 it was provided that the sheriff of Erie county shall receive, as compensation for his services, an annual salary, to be fixed by the board of supervisors of said county, prior to the election of every such sheriff; and it was provided that the salary so fixed "shall not be less than four thousand dollars, nor exceed five thousand dollars per annum." In section 2 of that act there was the following provision:

"Sec. 2. The salary so fixed by said board of supervisors shall constitute the whole compensation which shall be allowed or paid to or received by said sheriff for all the official services performed by him. as sheriff in his attendance upon any and all courts of record held in the county of Erie, and for all services performed by him for the United States, the state of New York, or for the county of Erie, or chargeable thereto or which he is or shall be required or authorized by law to perform by virtue of his office as such sheriff, and no compensation, payment or allowance shall be made to him for his own use for any of such services except the salary aforesaid."

We think the claim made by the relator is in clear opposition to the provisions of the statute, and that the board of supervisors properly denied the same, and that the special term was warranted in refusing to grant a writ of mandamus upon the papers used at the special term. There is a very exhaustive opinion prepared by the learned judge who held the special term, and the views expressed by him meet with our approval. We think the order made denying the application for a writ of peremptory mandamus should be affirmed, with costs against the relator.

Order affirmed, with costs.